# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

TAMARA D. AMICK,

                    Plaintiff,

v.                                              CIVIL ACTION NO.  2:25-cv-00549

CHRISTAL G. PERRY, et al.,

                    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Tamara D. Amick's Application to Proceed Without Prepayment of Fees and Costs, [ECF No. 1]. Also pending is Defendants WVTA, LLC ("WVTA") and Oak Hall's (together "the WVTA Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction, [ECF No. 11]. Plaintiff filed a timely response, [ECF No. 13], to which Defendants did not reply. The matters are ripe for adjudication.

When a party applies to proceed in forma pauperis—meaning, without paying the applicable fees and costs—the court is obliged by federal statute to screen the case and dismiss any claim by Plaintiff that is frivolous, malicious, fails to state a plausible claim for relief, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Having reviewed Plaintiff's Application, I find that Plaintiff has demonstrated an inability to pay the applicable filing fee. Accordingly, Plaintiff's Application, [**ECF No. 1**], is **GRANTED**, and Plaintiff is permitted to proceed in forma pauperis.

However, after reviewing the Complaint under 28 U.S.C. § 1915(e)(2), the WVTA Defendants' motion to dismiss, and the parties' arguments, I find that certain claims must be

dismissed at this stage. Specifically, Plaintiff's claims for monetary damages against Defendant Mark Hunt, in his official capacity as the West Virginia State Auditor, are barred by Eleventh Amendment immunity and are therefore **DISMISSED**. Likewise, Plaintiff's state law claim, to the extent it seeks injunctive or declaratory relief against state officers, is **DISMISSED**.

Because the Tax Injunction Act does not divest this court of jurisdiction over Plaintiff's remaining claims, the WVTA Defendants' Motion to Dismiss, [**ECF No. 11**], is **DENIED**, and Plaintiff's remaining claims may proceed.

### I.     BACKGROUND

On September 11, 2025, Plaintiff initiated this action by filing an Application to Proceed Without Prepayment of Fees and Costs, [ECF No. 1], and a Complaint, [ECF No. 2], alleging violations of due process and state law arising from the tax sale of her home. Plaintiff inherited her childhood home at 24 Church Street, Richwood, West Virginia (the "Church Street House"), from her mother, Barbara Peters, who held the property in fee simple until she passed away in August 2018. [ECF No. 2, ¶¶ 8, 21.] Plaintiff alleges that due to misdirected tax notices and administrative errors, she was not properly informed of her right to redeem a tax lien before a tax deed was executed on February 6, 2025. *Id.* ¶¶ 27–50.

Plaintiff asserts that Defendant Mark Hunt, acting in both his individual and official capacity as the West Virginia State Auditor, delegated authority to Defendant Christal G. Perry to execute the tax deed transferring the Church Street House to WVTA, a limited liability company wholly owned by Mr. Hall. [ECF No. 2, ¶¶ 13–18, 21.] Plaintiff alleges that Defendants Hunt and Perry were aware that notice of Plaintiff's right of redemption failed to reach her, that mailed notices were returned undeliverable, and that no attempt was made to serve her or her mother's estate directly. *Id.* ¶¶ 36–69. Plaintiff claims that this conduct deprived her of her constitutionally

protected property interests under the Fourteenth Amendment and violated her rights under West Virginia law. *Id.* ¶¶ 72–81.

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against Defendant Hunt, in his official and individual capacity, and Defendant Perry in her individual capacity, alleging the deprivation of Plaintiff's property interests without due process of law. [ECF No. 2, ¶¶ 72–76]. Plaintiff further alleges that the WVTA Defendants are liable under § 1983 as private actors acting under color of state law because they acted in concert with Defendants Hunt and Perry by participating in the execution of the tax deed despite knowledge that proper notice had not been provided.. *Id.* ¶¶ 69, 72–76. In addition, Plaintiff alleges violations of Article 3 of West Virginia Code Chapter 11A against all Defendants. *Id.* ¶¶ 77–81.

Plaintiff seeks declaratory relief to void the tax deed, as well as compensatory and consequential damages, punitive damages, litigation costs and attorney's fees, and all other relief to which Plaintiff may be entitled in law or equity. [ECF No. 2, ¶¶ 76, 81].

The WVTA Defendants move to dismiss, arguing the district court lacks subject matter jurisdiction under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, because Plaintiff "is challenging the State['s] tax sale process by which her property taxes were collected" and "the State provides Plaintiff with a sufficiently plain, speedy, and efficient remedy to address her constitutional claim." [ECF No. 12, at 2–3]. Plaintiff responds that this action does not interfere with the assessment, levy, or collection of taxes, as the State has already received the full amount owed. [ECF No. 13, at 9]. Plaintiff further contends that the State's post-deprivation remedy is not plain, speedy, or efficient, and therefore the TIA does not divest this court of jurisdiction. *Id.*

II.     **LEGAL STANDARD**

    *A.  28 U.S.C. § 1915*

Federal courts have statutory authority under 28 U.S.C. § 1915 to authorize the commencement of civil actions in forma pauperis, permitting qualified litigants to pursue their claims without prepaying the fees and costs of litigation. *DeBlasio v. Gilmore*, 315 F.3d 396, 398 (4th Cir. 2003) (citing *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981)). Under § 1915(e)(2)(B), however, the court must dismiss a case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. A case is "frivolous" when it lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law when it rests on an indisputably meritless legal theory, and it lacks an arguable basis in fact when its factual allegations describe "fantastic or delusional scenarios." *Denton v. Hernandez*, 504 U.S. 25, 31–32 (1992); *Neitzke*, 490 U.S. at 328; *see also Anders v. California*, 386 U.S. 738, 744 (1967).

When evaluating whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii), courts apply the same standard used for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016). All factual allegations are accepted as true, and reasonable inferences are drawn in the plaintiff's favor. *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Those facts must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 556 (2007)). Nonetheless, the complaint "need only give the defendant fair notice of what the claim is and the grounds on which it rests" and "is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

### B.  Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has the power to adjudicate the claims before it. *See Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

When evaluating a Rule 12(b)(1) motion, the court may consider two types of challenges: facial and factual. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A facial challenge contends that the complaint fails to allege facts sufficient to establish subject-matter jurisdiction; in such cases, the court accepts the allegations in the complaint as true and determines whether they are legally sufficient. *Id.* A factual challenge, on the other hand, disputes the truth of the jurisdictional facts alleged in the complaint. In resolving a factual challenge, the court "may consider evidence outside the pleadings," such as affidavits or exhibits, "without converting the [motion] to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). If the court determines that it lacks subject-matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

## III.    DISCUSSION

By way of background, I begin with a brief overview of the tax-sale process in West Virginia and the due process protections afforded to property owners. Under West Virginia law, every property owner has a statutory obligation to pay the taxes assessed on her real estate. *See* W. Va. Code §§ 11-3-1(c), 11A-1-2. To facilitate the administration and enforcement of those taxes, the West Virginia Legislature has enacted a comprehensive framework governing the accrual, collection, and enforcement of property tax liabilities. *See* W. Va. Code ch. 11A. Under this statutory scheme, the State holds a lien on all real property for the taxes assessed thereon, and that lien attaches annually on July 1. *Id.* § 11A-1-2. When a property owner fails to satisfy her tax obligations, the State may enforce its lien through several mechanisms, including by selling the lien to a third-party purchaser. *See generally Id.* §§ 11A-2-1 to -19.

Articles 3 and 4 of West Virginia Code Chapter 11A govern the sale of tax liens and the remedies incident to tax sales.[1] When taxes go unpaid, the property is first placed on the county sheriff's delinquent list, which the sheriff must present to the county commission and transmit to the State Auditor. *Id.* § 11A-2-14. If the delinquency continues, the sheriff prepares a subsequent list and ultimately certifies the property to the Auditor for further enforcement. *Id.* §§ 11A-3-2, 11A-3-8, 11A-3-44.

Once a property is certified to the Auditor, it becomes eligible for sale at public auction. *Id.* §§ 11A-3-44, -45. The Auditor appoints a "deputy commissioner of delinquent and nonentered lands" to act as the "Auditor's local agent" in each county. *Id.* §§ 11A-3-34(a), (d). The deputy

---

[1] The West Virginia Legislature enacted several revisions to Chapter 11A that became effective on June 10, 2022. This legislation marked the first comprehensive overhaul of the property tax sale framework in more than three decades, repealing numerous provisions and amending or reenacting others. Because the 2022 versions of the relevant state statutes were in effect at the time the tax lien was purchased, the notices were prepared, and service was attempted, those versions apply to this matter.

6

commissioner "is subject to the orders and control of the Auditor," and "shall do whatever is required by the Auditor" or by law. *Id.* § 11A-3-34(d). A property owner may redeem the property from the Auditor at any time before the Auditor certifies it to the deputy commissioner for sale. *Id.* § 11A-3-38.

Upon certification to the deputy commissioner, the ensuing tax sale occurs in two stages. First, the State sells its tax lien at a public auction conducted under the purview of the Auditor and the deputy commissioner. *Id.* §§ 11A-3-44, -45. Once a lien is sold,[2] the deputy commissioner must report the sale to the Auditor within 14 days. *Id.* § 11A-3-51. The Auditor then reviews the sale to determine whether it serves the best interest of the State and either approves or disapproves it. *Id.*

If the Auditor approves the sale, the purchaser has 120 days to compile and submit to the Auditor a list of all persons entitled to receive notice of their right to redeem. *Id.* § 11A-3-52.[3] The statute requires the purchaser to exercise "due diligence" in identifying the addresses of interested parties. *Id.* § 11A-3-55(d). Upon receiving the list, the Auditor must prepare and serve the notice by certified mail or in the manner used to commence a civil action on all listed parties within 30 days of the purchaser's request. *Id.* § 11A-3-55(a)–(c). If an interested party's address is unknown

---

[2] Any property that is not sold at public auction remains available to purchase through the Auditor's Office. W. Va. Code § 11A-3-48.

[3] The West Virginia State Constitution divides property into four classes: Class I (intangible personal property and certain personal property employed exclusively in agriculture); Class II (owner-occupied residential property used exclusively for residential purposes and all farm land used for agricultural purposes by its owner or bona fide tenant); Class III (all real and personal property situated outside a municipality that is not taxed in Class I or Class II); and Class IV (all property situated inside a municipality that is not taxed in Class I or Class II). W. Va. Const. art. 10-1; *see also* W. Va. Code § 11-8-5. For Class II property, in addition to providing the Auditor a list of interested parties entitled to notice of their right to redeem, the purchaser must also provide the property's actual mailing address and deposit (or offer to deposit) a sum sufficient to cover the costs of preparing and serving the notice. *Id.* §§ 11A-3-52(a)(1)–(3).

Although the Complaint does not specify the classification of the Church Street House at the time of assessment, it alleges that at the time of Ms. Peters' death, "the home had been held as rental property for some years." [ECF No. 1, ¶ 25]. Plaintiff did not reside in the home until 2021. *Id.* ¶ 27. Accepting those allegations as true, the property was not owner-occupied on the relevant assessment date and therefore would fall within Class IV, assuming it lies within municipal boundaries.

and cannot be discovered through due diligence, the notice must be served by publication. *Id.* § 11A-3-55(d). Notices must be mailed[4] at least 45 days before the earliest date a tax deed may be issued to the purchaser. *Id.*

Significantly, in terms of title to the property, the original owner continues to hold title to the property until the tax lien "ripens" into a tax deed. *See Huggins v. Pro. Land Res., LLC*, No. 1:12-cv-00046, 2013 WL 431770, at *1 (N.D.W. Va. Jan. 25, 2013) (Keeley, J.). A tax-lien sale does not convey ownership of the property itself; it conveys only the lien. *Id.* at *2.

The second stage of the tax sale occurs once the post-sale redemption period expires, at which point the deputy commissioner may issue a quitclaim deed to the purchaser. *Id.* § 11A-3-52. Until a tax deed is issued, the property may still be redeemed at any time by the original owner. *Id.* § 11A-3-56. Once the tax deed is issued, however, the original owner's right of redemption is extinguished. *Id.* §§ 11A-3-23, -56.

In addition to complying with the requirements imposed by state law, the State must also comply with the constitutional protections guaranteed by the Due Process Clause of the Fourteenth Amendment. As the Supreme Court of the United States explained, "[b]efore a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 313 (1950)).

To be sure, due process does not require that a property owner receive actual notice before the government may take her property. *Id.* at 226. It does, however, require the government to

---

[4] "If service by publication is necessary, publication shall be commenced within 60 days following the request for the notice, and a copy of the notice shall, at the same time, be sent . . . to the last known address of the person to be served." W. Va. Code § 11A-3-55(d).

undertake steps "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane*, 339 U.S. at 314). The Court has declined to prescribe a precise formula for what constitutes adequate notice in every tax-sale context. *Id.* at 234, 238. It has nonetheless identified examples of "reasonable follow-up measures" that the government should consider in cases where a certified mailing is returned unclaimed, including sending notice by regular mail, posting notice on the property, or addressing otherwise undeliverable mail to "occupant." *Id.* at 234–35. At the same time, due process does not require the government to undertake an "open-ended search" for a property owner's new address. *Id.* at 236.

Building on these principles, the Supreme Court of Appeals of West Virginia has articulated the constitutional protections applicable to notice in tax-sale proceedings as follows: "Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party *be provided notice by mail or other means as certain to ensure actual notice.*" *Mason v. Smith*, 233 W. Va. 673, 680, 760 S.E.2d 487, 494 (2014) (quoting Syl. Pt. 1, *Lilly v. Duke*, 180 W. Va. 228, 228, 376 S.E.2d 122, 122 (1988)). This obligation requires the notifying party to "utilize methods or means that anyone honestly seeking to actually effectuate the notice would reasonably employ." *Kebler, LLC v. WVT, LLC*, 213 F. Supp. 3d 789, 794 (N.D. W. Va. 2016) (Keeley, J.) (citing *Jones*, 547 U.S. at 229 ("[W]hen notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it[.]" (quoting *Mullane*, 339 U.S. at 315)). Thus, "when prompt return of an initial mailing makes clear that the original effort at notice has failed, the party charged with notice must make reasonable efforts to learn the correct address before

constructive notice will be deemed sufficient." *deWet v. Rollyson*, 157 F. 4th 344, 351 (4th Cir. 2025) (quoting *Plemons v. Gale*, 396 F.3d 569, 576 (4th Cir. 2005)).

Here, both stages of the tax-sale process are complete. The State sold its tax lien on the Church Street House to the WVTA Defendants, and Defendant Perry, acting at the direction of Defendant Hunt, subsequently issued a tax deed to the WVTA Defendants.  Against this backdrop, I turn to the merits of the WVTA Defendants' motion.

### A.  Tax Injunction Act

The WVTA Defendants move to dismiss this action pursuant to Rule 12(b)(1), asserting a facial challenge to the court's jurisdiction under the TIA. [ECF No. 12, at 2]. The WVTA Defendants argue that the TIA divests this court of jurisdiction because the relief Plaintiff seeks would restrain the assessment and collection of state taxes. *Id.* at 3–6. I disagree. The central issue here is not the State's authority to assess and collect property taxes, nor the constitutionality of West Virginia's tax-sale framework as a whole. Rather, Plaintiff challenges the constitutional adequacy of the notice provided by Defendants prior to the issuance of the February 6, 2025 tax deed. [ECF No. 2, ¶¶ 72–76; ECF No. 13, at 2]. The threshold question is therefore whether Plaintiff may invoke a federal forum to resolve this constitutional claim. I conclude that she may.

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The statute was enacted to prevent federal-court interference in cases where taxpayers seek federal-court orders enabling them to avoid paying state taxes. *Hibbs v. Winn*, 542 U.S. 88, 107 (2004). Courts have broadly interpreted the TIA to bar federal jurisdiction over suits "to restrain state tax collection," including actions seeking declaratory or injunctive relief that would have the same practical effect. *Fair*

*Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107–08 (1981); *see also Chamber of Com. v. Lierman*, 90 F.4th 679 (4th Cir. 2024) ("The [TIA] applies to claims for both declaratory and injunctive relief."); *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000); *Int'l Lotto Fund v. Va. State Lottery Dep't*, 20 F.3d 589, 591–92 (4th Cir. 1994).

When evaluating the TIA's reach, courts generally consider two questions: (1) whether the relief sought would "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law," and (2) whether "a plain, speedy and efficient remedy may be had in the courts of" the forum state. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 7 (2015). Here, Plaintiff does not dispute that her 2021 taxes were owed and paid by the lien purchaser, nor does she seek to invalidate those taxes. [ECF No. 13, at 8]. Instead, she seeks a declaration that the tax deed issued on February 6, 2025 is void due to violations of her due process rights. As discussed below, such relief does not restrain the assessment, levy, or collection of taxes; accordingly, the court need not reach the second inquiry.

The Supreme Court's decision in *Hibbs v. Winn*, 542 U.S. 88 (2004), is instructive. There, the Court explained that the TIA's protections extend only to suits aimed at avoiding state tax obligations, circumventing a state's "pay now, litigate later" refund regime, or otherwise impeding a state's ability to secure tax revenue. *Hibbs*, 542 U.S. at 104–07 ("Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." (internal quotation marks omitted)). In reaching its decision, the Court observed that the TIA was intended to achieve "two closely related, state-revenue-protective objectives:" (1) to prevent disparities between taxpayers who could seek federal-court injunctive relief and those limited to state courts; and (2) to prevent taxpayers "from withholding large sums, thereby disrupting state government finances." *Id.* at 104–05 (citing S. Rep. No. 75–

1035, at 1–2 (1937)). Thus, the dispositive inquiry in assessing the TIA's jurisdictional bar is whether the requested federal-court relief would operate "to reduce the flow of state tax revenue." *Id.* at 105–06; *see also May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1267 (9th Cir. 2004).

Consistent with this framework, the Supreme Court has defined many of the TIA's operative terms. "Restrain" means "'[t]o prohibit from action; to put compulsion upon . . . to enjoin,' which captures only those orders that stop (or perhaps compel) acts of 'assessment, levy and collection.'" *Direct Mktg. Ass'n*, 575 U.S. at 12 (internal citation omitted) (adopting the narrower meaning). "'Assessment' . . . refers to the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing authority." *Id.* at 9. "Levy" means "an official governmental action imposing, determining the amount of, or securing payment on a tax." *Id.* "Finally, 'collection' is the act of obtaining payment of taxes due." *Id.* at 10. Plaintiff's requested relief implicates none of these functions.

Plaintiff does not challenge the validity of any tax, the State's authority to assess or collect property taxes, the tax rate, the valuation of her property, or the functioning of West Virginia's tax-collection system. Rather, she alleges that the Nicholas County Tax Office inadvertently misaddressed her 2021 tax bill, leaving her unaware that the Church Street House's property taxes had not been included in her yearly payment. [ECF No. 1, ¶¶ 30–31]. Her failure to pay the 2021 taxes was inadvertent and not an effort to evade a lawful obligation. *Id.* ¶ 32. Under these circumstances, voiding the February 6, 2025 tax deed would not impair the State's ability to collect taxes or affect its revenue. The taxes at issue had already been collected before the tax deed issued, and any redemption payments would go to the lien purchasers, not the State. Plaintiff has not indicated any unwillingness to pay taxes owed, including amounts required for redemption.

Accordingly, the relief Plaintiff seeks would not interfere with ongoing tax administration or the State's revenue stream. *See Direct Mktg. Ass'n*, 575 U.S. at 4 (holding that a constitutional challenge to Colorado's law requiring retailers that do not collect Colorado sales or use tax to notify customers of use-tax liabilities and report such information to the state tax authority was not barred by the TIA); *see also Luessenhop v. Clinton County*, 466 F.3d 259, 261 (2d Cir. 2006) (holding that the TIA did not bar federal jurisdiction over plaintiffs' due process claim challenging inadequate notice of a tax foreclosure, where plaintiffs did not dispute the taxes owed or the state's authority to collect property taxes).

The TIA likewise does not bar Plaintiff's claim for monetary relief under 42 U.S.C. § 1983. The statute does not preclude damages claims arising from past constitutional violations when the requested relief would not restrain ongoing tax collection. As noted above, the dispositive question in evaluating the reach of the TIA is whether the requested relief would reduce or disrupt the State's flow of tax revenue. Plaintiff's claims concern only the adequacy of post-collection, pre-tax-deed notice in her individual case, not the validity of the state tax scheme or any continuing enforcement process. Adjudicating her § 1983 claim would require only a determination that the notice provided was constitutionally deficient and would have no effect on the State's ability to assess, levy, or collect taxes.

### B.  Comity

Because I have an independent duty to assess a complaint for claims that are frivolous, malicious, fail to state a plausible claim for relief, or seek monetary relief from a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B), I will address issues beyond those presented in the WVTA Defendants' Motion to Dismiss. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006).

When a federal court addresses a challenge involving state law or a state function, principles of comity are implicated. Here, those principles do not require dismissal. "The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction[,]" reflecting respect for state functions and the autonomy of state governments. *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417, 421 (2010). "Comity's constraint has particular force when lower federal courts are asked" to review the constitutionality of state taxation, because states rely on tax revenue to fund their governments, thus federal interference with tax enforcement should be limited. *Id.* at 421–22.

Although the Supreme Court has repeatedly recognized that the comity doctrine is "more embracive than the TIA," *see e.g.*, *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417, 424 (2010); *Fair Assessment in Real Est. Ass'n v. McNary*, 454 U.S. 100, 110 (1981) ("[T]he principle of comity which predated the [TIA] was not restricted by its passage."); *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 590 (1995) ("[T]he [TIA] may be best understood as but a partial codification of the federal reluctance to interfere with state taxation."), it does not automatically bar all claims arising from constitutional deprivations related to a state tax scheme.

The Fourth Circuit has consistently allowed retrospective claims arising from completed tax sales to proceed in federal court.[5] *See, e.g.*, *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005); *O'Neal v. Rollyson*, 729 F. App'x 254 (4th Cir. 2018) (per curiam); *deWet v. Rollyson*, 157 F.4th 344 (4th Cir. 2025). In each case, plaintiffs brought § 1983 claims challenging the constitutionality

---

[5] The court is also mindful that none of these decisions expressly addressed the applicability of the TIA. Because the TIA imposes a jurisdictional limitation, however, courts have an independent obligation to consider its application even when not raised by the parties. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[C]ourt[s] . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). The Fourth Circuit's adjudication of these claims without invoking the TIA therefore supports the conclusion that the TIA does not deprive federal courts of jurisdiction over this type of constitutional challenge.

14

of the notice provided after the tax sale had concluded. *Plemons*, 396 F.3d at 572–78 (examining whether plaintiff received constitutionally sufficient notice before the issuance of a tax-sale deed that extinguished her property interest); *O'Neal*, 729 F. App'x at 255–57 (considering whether deputy commissioner violated plaintiffs' clearly established Fourteenth Amendment due process rights by failing to take reasonably available steps to provide notice after mailed notices were returned undeliverable); *deWet*, 157 F.4th at 350–52 (holding that state official was entitled to qualified immunity because he "wasn't on notice that he needed to have [lien purchaser] search county records anew for [owner's] mailing address" before issuing a tax deed). Notably, in permitting those actions to proceed, the Fourth Circuit did not invoke or apply principles of comity to bar federal adjudication.

Similarly, here, Plaintiff seeks retrospective monetary damages and declaratory relief for a completed deprivation of her property due to constitutionally inadequate notice. *See Jones*, 547 at 234. Adjudicating this claim would not interfere with ongoing state tax operations or revenue collection. If Plaintiff prevails, the State's tax collection process would remain unaffected: the State can continue to place liens on properties, sell liens at public auction, and recover taxes owed through the sale of tax liens. *See e.g.*, *Freed v. Thomas*, 976 F.3d 729, 737 (6th Cir. 2020) (finding comity does not bar suit where "[a] favorable outcome for [plaintiff] . . . will not prevent [the state] from foreclosing on and selling property to recover delinquent taxes"). Plaintiff does not challenge the amount or validity of the taxes, the state's tax rate, property assessments, or the functioning of West Virginia's tax-collection system. She challenges only a completed, allegedly unconstitutional deprivation of property in violation of her Fourteenth Amendment due process rights. Under these circumstances, comity provides no basis to dismiss the case.

15

Because adjudicating this claim will not disrupt the State's fiscal operations, neither the TIA nor the principles of comity bar this action. Accordingly, the WVTA Defendants' Motion to Dismiss, [**ECF No. 11**], is **DENIED**.

### C. Claims Against the WVTA Defendants

To state a claim under § 1983, a plaintiff must allege that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). The color-of-law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]" *Id.* at 50 (internal quotation marks omitted). In rare cases, however, the state can "so dominate[] [private] activity as to convert it to state action." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009); *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). Defendants may also be considered state actors if they have a "sufficiently close relationship with state actors" such that they are effectively carrying out the state's actions. *Cox v. Duke Energy Inc.*, 876 F.3d 625, 632 (4th Cir. 2017) (internal quotation marks omitted).

"Under West Virginia law, the State is the initial seller of a tax lien; it thereafter provides the lien purchaser with the mechanism for affording notice of the owner's right to redeem the property after the lien sale." *deWet*, 157 F.4th at 348 n.1 (citing *Plemons*, 396 F.3d at 572 n.3). In essence, the State "assigns to a private party the State's Fourteenth Amendment obligation to notify property owners of their right to redeem their property interest." *Huggins v. Pro. Land Res., LLC*, No. 1:12-cv-00046, 2013 WL 431770, at *2 (N.D. W. Va. Jan. 25, 2013). "The State also extinguishes the owner's rights to the property by issuing the tax deed to the property." *Plemons*, 396 F.3d at 572 n.3. Therefore, to complete the tax sale, "private parties must 'make use of state

procedures with the overt, significant assistance of state officials,' and thus, there is state action." *Id.* (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988)).

Here, the WVTA Defendants are private parties, not state actors in their own right. However, Plaintiff alleges that the WVTA Defendants acted "in concert" with state officials in effectuating the tax sale and deed. [ECF No. 2, ¶ 69]. Accepting those allegations as true, I find the Complaint adequately pleads state action under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982). At this stage, the alleged use of state-prescribed tax-sale procedures, together with the alleged involvement of state officials, suffices to treat the challenged conduct as action taken under color of state law.

### D. Sovereign Immunity

To the extent Plaintiff seeks monetary relief from Defendant Hunt in his official capacity, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "'[T]he Supreme Court has made clear that 'neither a State nor its officials acting in their official capacities are "persons" under § 1983.'" *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 258 (4th Cir. 2022) (quoting *Will*, 491 U.S. at 71). An exception exists, however, when a state official in his or her official capacity is sued for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (internal quotation marks omitted); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 693 (S.D. W. Va. 2014) (Johnston, J.)). Under *Ex parte Young*, 209 U.S. 123 (1908), a federal court may issue prospective, injunctive relief against a state officer in their official capacity to prevent ongoing violations of federal law. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020); *see also deWet v. Rollyson*, 733 F. Supp. 3d 519, (S.D. W. Va. 2024) (Volk, J.) ("Under *Ex parte Young*, private citizens may sue state officials in

their official capacities in federal court to obtain prospective relief from ongoing violations of federal law.").

Here, Plaintiff seeks retrospective monetary relief for a completed act, which *Ex parte Young* does not permit. The *Ex parte Young* exception authorizes only prospective relief aimed at preventing ongoing constitutional violations, not retroactive damages. Plaintiff's request to void the tax deed, however, stands on different footing. Although the alleged due process violation occurred at the time the tax deed was issued without adequate notice, the deed continues to operate to divest Plaintiff of title. A declaration that the February 6, 2025 tax deed is null and void would therefore alter a present legal condition and would not require the payment of funds from the state treasury. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645–46 (2002).

Accordingly, to the extent Plaintiff seeks retrospective monetary relief against Defendant Hunt in his official capacity, that claim is **DISMISSED**.[6]

### E.  State Law Claim

To the extent Plaintiff asserts a claim under W. Va. Code § 11A-3, federal courts lack jurisdiction to order state officials to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 121 (1984) ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."); *see also W. Va. Oil & Nat. Gas Ass'n v. Wooten*, 631 F. Supp. 2d 788, 796 (S. D. W. Va. 2008) (Goodwin,

---

[6] A state actor sued in her individual capacity for monetary damages generally qualifies as a suable "person" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). She may nevertheless invoke qualified immunity if she did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garrett v. Clarke*, 74 F.4th 579, 583 (4th Cir. 2023). Although Defendants Hunt and Perry assert qualified immunity in their Answer, [ECF No. 6, at 16], the issue has not yet been briefed. At this stage, the court makes no determination regarding qualified immunity, which remains preserved for consideration upon motion or at a later stage of the proceedings. *See Riddick v. Barber*, 109 F.4th 639, 650 n.5 (4th Cir. 2024) ("[Q]ualified immunity typically is best addressed 'at the summary judgment stage after the facts have been developed through discovery.'" (quoting *Alford v. Cumberland Cnty.*, No. 06-1569, 2007 WL 2985297, at *3 (4th Cir. Oct. 15, 2007)).

J.) ("[F]ederal courts are barred by the Eleventh Amendment from enjoining state officers from violating state law . . . ."). As the Supreme Court explained, "[w]hen a federal court instructs state officials on how to conform their conduct to state law," this "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* at 121. "[T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* Thus, injunctive and declaratory relief in this case cannot be grounded in a state-law obligation of the State Auditor or deputy commissioner.[7] *See Const. Party of W. Va. v. Jezioro*, No. 2:08-CV-61, 2009 WL 10710235, at *6 (N.D. W. Va. Jan. 16, 2009) ("Plaintiffs also brought claims against defendants, State officials, for violation of State law; these claims are barred by Eleventh Amendment to the United States Constitution to the extent that plaintiffs seek injunctive or declaratory relief.") Rather, such relief would be warranted because these Defendants allegedly violated Plaintiff's federal constitutional right to due process by failing to provide adequate notice of her right to redeem after the notice was returned undelivered, not because they failed to comply with a state statute.

While the state statute may inform the court's understanding of the contours of the process due, it is not dispositive. *See Plemons*, 396 F.3d at 572 ("West Virginia's statutory notice requirements parallel the requirements of the United States Constitution.") (first citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983); and then citing *Mullane v. Cent. Hanover Bank &*

---

[7] "[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action," *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018), or else constructive pleading would "undermine the principle . . . that Eleventh Amendment immunity represents," *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014). W. Va. Code § 11A-3 contains no clear statement authorizing federal court jurisdiction. *Pennhurst*, 465 U.S. at 121.

19

*Tr. Co.*, 339 U.S. 306 (1950)). Whether statutorily required notice is constitutionally sufficient may vary depending on the circumstances. A tax deed may still be voided as a remedy for a federal due process violation because such relief is based on federal law, not compliance with state statutory duties. Accordingly, to the extent Plaintiff seeks to void the tax deed based on state officers' alleged noncompliance with the procedures in W. Va. Code § 11A-3, that claim is **DISMISSED**.[8]

### IV.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiff's Application to Proceed Without Prepayment of Fees or Costs, [ECF No. 1], is **GRANTED**;

2. Defendants' Motion to Dismiss, [**ECF No. 11**], is **DENIED**;

3. Plaintiff's claims for retrospective monetary damages against Defendant Hunt in his official capacity are **DISMISSED**; and

4. Plaintiff's state law claim for injunctive and declaratory relief is **DISMISSED** consistent with this Memorandum Opinion.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        February 26, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[8] Count 2 remains pending to the extent Plaintiff seeks remedies against Defendants Hunt and Perry, in their individual capacities, and the WVTA Defendants that are available under state law. *See Folse v. Rollyson*, 249 W.Va. 389, 398, 895 S.E.2d 244, 253 (W. Va. Ct. App. 2023) ("The tax lien scheme is a creation of statute, and where the legislature has provided a remedy at law, equitable or extraordinary forms of relief are inappropriate. We are thus restrained to only grant . . . whatever relief our statutes make available . . . . [G]eneral damages are not contemplated in § 11A-3." (internal citation omitted)).